UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KIMBERLY SEELEY BOKKENHEUSER,

        Plaintiff,

v.

ROBERT LLOYD SEELEY,

        Defendant.

        Serve:  Robert Lloyd Seeley
                 945 S. 5th Street, Apt. 306
                 Louisville, Kentucky 40203

Case Number: 3:19-CV-268-JHM

---

## COMPLAINT FOR MONEY DAMAGES

---

Under Fed. R. Civ. P. 8(a)(1)-(3), the Plaintiff, Kimberly Seeley Bokkenheuser ("Plaintiff") files this Complaint against the Defendant, Robert Lloyd Seeley ("Defendant") and for her claims against Defendant states as follows:

### THE PARTIES

1.    Plaintiff is a natural person and a citizen (as such term is used in 28 U.S.C. § 1332(a)(1)) of the State of California.  She resides at 2320 N. Beachwood Drive, Los Angeles, California 90068.  Before she got married, Plaintiff's name was Kimberly Ann Seeley.

2.    Defendant is 72-year old natural person and a citizen (as such term is used in 28 U.S.C. § 1332(a)(1)) of the Commonwealth of Kentucky.  He resides at 945 S. 5th Street, Apartment 306, Louisville, Kentucky 40203.

**JURISDICTION AND VENUE**

3.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different States.

4.      Venue is proper in the Western District of Kentucky (the "Western District") under 28 U.S.C. §§ 1391(b)(1)–(2) because Defendant resides in the Western District and a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendant occurred in the Western District.

**FACTUAL ALLEGATIONS**

5.      Defendant is Plaintiff's biological father.

6.      Defendant has been employed in several executive capacities during his career. He served as the President and Chief Executive Officer ("CEO") of Derbigum Americas Inc. in Kansas City, Missouri.  Defendant was also the Executive Vice President of Sales and Marketing with Elkay Manufacturing Company in Oak Brook, Illinois.  He also served as the Executive Vice President and CEO of Yorketowne Cabinetry Company in Yorktowne, Pennsylvania.  Finally, Defendant served as the General Manager of Sales and Marketing for General Electric Appliances Latin America Operations.

7.      As a result of his career in business, Defendant is financially savvy and Plaintiff turned to him for financial advice on several occasions.

8.      Unbeknownst to Plaintiff and without her consent, Defendant obtained five Stafford college loans (the "Five Loans") in Plaintiff's name and forged her signature on the documents evidencing said loans.

9.      Information concerning the Five Loans is as follows:

(i)    A $3,500 direct unsubsidized Stafford Loan for the academic period August 23, 1995 to May 3, 1996 at the University of Kentucky ("UK");

(ii)   A $2,000 direct unsubsidized Stafford Loan for the academic period January 10, 1996 to May 3, 1996 at UK;

(iii)  A $5,500 direct unsubsidized Stafford Loan for the academic period August 28, 1996 to May 9, 1997 at UK;

(iv)   A $5,000 direct unsubsidized Stafford Loan for the academic period August 28, 1996 to May 9, 1997 at UK; and

(v)    A $2,750 direct unsubsidized Stafford Loan for the academic period August 27, 1997 to May 1, 1998 at UK.

10.     The aggregate original principal amount of the Five Loans was $18,750.

11.     At the time that Defendant obtained the Five Loans in Plaintiff's name and forged her name to the loan documents evidencing said loans, Plaintiff was enrolled at UK.

12.     While enrolled at UK, Defendant and Plaintiff's biological mother told Plaintiff that they were paying the tuition for Plaintiff to attend UK with their own money.

13.     On November 28, 2000, Defendant consolidated the Five Loans by a Loan Consolidation and Promissory Note in the original principal amount of $24,000 (the "Consolidation Loan"), again forging Plaintiff's signature on the Consolidation Loan without her knowledge or consent.

14.     A true and correct redacted copy of the Consolidation Loan is attached hereto as **Exhibit 1**. The only information that has been redacted from the Consolidation Loan are the first five digits of Plaintiff's social security number and then-Kentucky driver's license and the month and day on which Plaintiff was born.

15.     The name of the lending institution that made the Consolidation Loan was "Citibank c/o SunTech." *See* **Exhibit 1** at box 14.

3

16.     The New York State Higher Education Services Corporation ("HESC") guaranteed the Consolidation Loan.

17.     HESC and the U.S. Department of Education administer the Consolidation Loan.

18.     Between 2001–2016, documents that Plaintiff first learned of and reviewed in May 2016 indicate that the required payments on the Consolidation Loan were not timely made and several collection agencies attempted to collect the Consolidation Loan, sending all written communications to Defendant, or addressed to Plaintiff at Defendant's addresses in Kentucky, Pennsylvania and Illinois.  Plaintiff never received any of these written communications because she lived in California at all times between 2001 and 2016 and Defendant neither shared these communications with Plaintiff nor informed her of the same.

19.     On April 10, 2014, Defendant forged Plaintiff's signature without her knowledge or consent on an Acknowledgment of Debt for Rehabilitation of Defaulted Students Loans with regard to the Consolidation Loan.

20.     In April 2016, Plaintiff received a letter from the Department of Treasury at her residence in Los Angeles, California, notifying her that the Internal Revenue Service (the "IRS") had set off her $1,901.00 federal income tax refund against an outstanding debt due to the United States.  Not knowing why the IRS had offset her $1,901 refund, Plaintiff contacted Defendant and asked him what she should do to sort the matter out with the IRS.  Defendant offered to handle the IRS matter for Plaintiff, and requested that Plaintiff forward him the pertinent documentation, which Plaintiff promptly did.

21.     In May 2016, Defendant suffered some severe health issues.  Plaintiff flew from Los Angeles to Louisville to assist her family with Defendant after he had been admitted to the hospital for treatment of severe mental duress.

22.     While Defendant was in the hospital, Plaintiff and her biological mother discovered boxes of documents in Defendant's home office regarding the existence of, and written communications concerning, the Five Loans and the Consolidation Loan (collectively, the "Loans"), which then totaled $86,561.65.  By reviewing these documents, Plaintiff learned for the very first time that Defendant had obtained the Loans without her knowledge or consent by forging Plaintiff's signature on the documents evidencing the Loans.  She also learned that the IRS had offset the following federal tax refunds on the following dates: (1) $1,341.00 on April 29, 2011; (2) $1,439.00 on April 20, 2012; and (3) $2,102.00 on April 30, 2013.

23.     Plaintiff returned home to Los Angeles in mid-June 2016 with two suitcases of documents (i.e., the Consolidation Loan, collection letters concerning the Loans, Defendant's handwritten notes of telephone conversations regarding the Loans, etc.) that she obtained from Defendant's home office.  Since that time, Plaintiff has spent nearly three years trying to figure out how and why Defendant forged her signature on the documents evidencing the Loans without her knowledge or consent, and why Plaintiff only learned of the matter in the spring of 2016.

24.     At the advice of a business accountant, Plaintiff ran a credit check with Experian Information Solutions, Inc. ("Experian") and placed a credit freeze and a fraud alert with all three credit reporting agencies (Experian, Equifax Information Services, LLC and TransUnion, LLC) in August 2016.

25.     The Loans have been transferred by HESC to different lenders, which subsequently transferred the Loans back to HESC upon default.  Each time the Loans were transferred, a fee was added to the balance of the Loans.

26.     Between June 2016 and August 2017, Plaintiff disputed her liability as to all the Loans with several representatives of HESC and various collection agencies, explaining that Defendant forged Plaintiff's signature on the documents evidencing the Loans without her knowledge or consent.  These collection agencies included the Federal Aid Loan Department, the American Education Services (AES)/Suntrust Bank, Performant Recovery, Inc., and Continental Service Group, Inc. ("ConServe").

27.     By a letter to Michael Theodorou of ConServe dated September 29, 2017 (the "September 29, 2017 Letter"), Plaintiff disputed her liability as to all the Loans based on Defendant's forgery of her signature on the documents evidencing the Loans.  At that time, ConServe was trying to collect the Consolidations Loan.

28.     Attached to the September 29, 2017 Letter were several documents that supported Plaintiff's position that she is not liable for the Loans, including: (a) an Affidavit of Identity Theft/Forgery dated September 30, 2017 (the "Identity Theft/Forgery Affidavit"); (b) an Addendum for Affidavit of Identity Theft/Forgery (the "Addendum"); (c) a Federal Trade Commission Identity Theft Report dated September 26, 2017; (d) a Los Angeles Police Department Investigative Report dated September 28, 2017; (e) documents written by Defendant; and (f) documents bearing Plaintiff's signature (i.e., two U.S. Passports, a Social Security Card, two California driver's licenses, and a Kentucky driver's license).  A comparison of the documents signed by Plaintiff and those written by Defendant make clear that Plaintiff did not sign any of the documents evidencing the Loans.

29.     True and correct redacted copies of the September 29, 2017 Letter (exclusive of the numerous documents referred to therein and attached thereto), the Identity Theft Affidavit

and Addendum are included in attached **Exhibit 2**.  The information required to be redacted from

the three documents included in **Exhibit 2** under Fed. R. Civ. P. 5.2(a) has been redacted.

30.     By a letter from HESC dated June 5, 2018, a true and correct copy of which is

attached hereto as **Exhibit 3** (exclusive of the documents referred to therein and transmitted to

Plaintiff therewith), HESC responded to the September 29, 2017 Letter and denied Plaintiff's

request for a discharge of liability under the Consolidation Loan on the ground of identity theft.

In its denial letter, HESC complained that Plaintiff had failed to "provide a copy of a judgment

from a court of competent jurisdiction stating that you [Plaintiff] are the victim of identity theft

and naming your perpetrator."  **Exhibit 3** at 3.

31.     By letter dated July 5, 2018, Plaintiff appealed HESC's June 5, 2018 denial of her

request for a discharge of liability under the Consolidation Loan on the ground of identity theft to

the U.S. Department of Education.

32.     By letter dated August 23, 2018, the U.S. Department of Education upheld

HESC's decision to deny Plaintiff's request for a discharge of liability under the Consolidation

Loan on the ground of identity theft.

33.     By letter dated October 9, 2018, Plaintiff filed a Request for Review with HESC

and objected to the U.S. Department of Education's stated intention to collect by Treasury offset

the amount allegedly owed by Plaintiff under the Consolidation Loan.

34.     By letter dated February 7, 2019, Plaintiff was notified by HESC that the position

of the U.S. Department of Education remained unchanged (i.e., Plaintiff had failed to prove that

she was entitled to a discharge of liability under the Consolidation Loan on the ground of identity

theft).

35.     Plaintiff is filing this Complaint to obtain an adjudication from this Court that Plaintiff was the victim of identity theft by Defendant as the Loans, including the Consolidation Loan, and that Defendant forged Plaintiff's signature on the documents evidencing the Loans without her knowledge or consent.  HESC and the U.S. Department of Education have taken the position that such an adjudication is required under 34 C.F.R. 682.402(e)(3)(v)(D) in order for Plaintiff to obtain a discharge of liability under the Consolidation Loan.

**COUNT I**
**INVASION OF PRIVACY/IDENTITY THEFT**
**<u>AND REQUEST FOR AN AWARD OF PUNITIVE DAMAGES</u>**

36.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–35 above.

37.     The invasion of privacy as an actionable tort has been part of Kentucky law since 1909.  The basis of the tort, while not subject to precise definition, may be best described as the right of every citizen to be let alone.

38.     In Kentucky, the right of privacy is invaded by, among other things, appropriation of one's name or likeness or publicity that unreasonably places the person in a false light before the public.

39.     By stealing Plaintiff's identity and forging her signature on the documents evidencing the Loans without her knowledge or consent, Defendant invaded Plaintiff's right to privacy.

40.     Defendant undoubtedly misappropriated Plaintiff's name and personal information, including her date of birth and social security number, to obtain the Loans in Plaintiff's name, and did so by forging her signature on the documents evidencing the Loans, including the Consolidation Loan.

41.     Defendant also placed Plaintiff in a false light before the public, which is another way in which Defendant invaded Plaintiff's right to privacy.  The basic requirements of this manner of invasion of the right to privacy has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard of, the falsity of the publicized matter and the false light in which the other was placed.  Here, any reasonable person would find it highly offensive if Person A placed Person B in a false light by obtaining loans in Person B's name by forging Person B's signature on loan documents without Person B's knowledge or consent, and then defaulted on the loans and ruined Person B's ability to obtain credit.  It is beyond dispute that Defendant knew, or acted in reckless disregard of, the falsity of the publicized matter, and the false light in which he placed Plaintiff.

42.     Plaintiff has been damaged by Defendant's invasion of her privacy.  The IRS has withheld federal tax refunds due Plaintiff in the amount of $6,783 in 2011–2013 and 2016.  By a Notice Prior to Wage Withholding dated March 5, 2019, HESC gave Plaintiff notice that it intends to order Plaintiff's employer to immediately withhold money from her pay for payment of Plaintiff's alleged obligation as to the Consolidation Loan, which HESC claims is now $87,819.72.

43.     The actions of Defendant that form the basis of Plaintiff's invasion of privacy claim were oppressive (i.e., specifically intended by Defendant to subject Plaintiff to cruel and unjust hardship), intentional, wanton or reckless misconduct and/or carried out with malice (i.e., conduct which was specifically intended by Defendant to cause tangible or intangible injury to Plaintiff or conduct that Defendant carried out both with a flagrant indifference to the rights of Plaintiff and with a subjective awareness that such conduct would result in human death or

bodily harm).  Under these circumstances, Plaintiff is entitled to an award of punitive damages against Defendant under KRS § 411.186(2).

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendant on Count I; (2) award Plaintiff damages, including punitive damages, in an amount to be established at trial or on summary judgment; (3) award Plaintiff prejudgment interest at the rate of eight percent per annum under KRS § 360.010 and postjudgment interest under KRS § 360.040 at the rate of six percent per annum compounded annually; (4) award Plaintiff all of the costs that she incurs in the litigation of this action; and (5) grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT II
### FRAUD BY OMISSION AND REQUEST
### FOR AN AWARD OF PUNITIVE DAMAGES

44.      Plaintiff incorporates by reference the allegations contained in paragraphs 1–43 above.

45.      In order for Plaintiff to prevail on a fraud by omission claim under Kentucky law against Defendant, Plaintiff must clearly prove that: (1) Defendant had a duty to disclose a material fact; (2) Defendant failed to disclose that fact; (3) Defendant's failure to disclose the material fact induced Plaintiff to act; and (4) Plaintiff suffered actual damages.

46.      Kentucky law recognizes a duty to disclose in four instances: (1) a duty arising from a confidential or fiduciary relationship; (2) a duty imposed by statute; (3) when a party has partially disclosed material facts to an opposing party but created the impression of full disclosure; and (4) where one party has superior knowledge and is relied upon to disclose the same.

47.     Defendant had a duty to disclose to Plaintiff that he forged her signature on the documents evidencing the Loans because he was in a confidential or fiduciary relationship with Plaintiff (father–daughter and he was her financial advisor) and because he had superior knowledge of his forgeries of Plaintiff's name on the Loan Documents and Plaintiff relied upon him to disclose the same.

48.     Defendant failed to tell Plaintiff that he had forged her signature on the documents evidencing the Loans for two decades.

49.     Defendant's failure to disclose his forgeries of Plaintiff's signature on the documents evidencing the Loans induced Plaintiff not to take action sooner to try and get a discharge as to the Loans, including the Consolidation Loan.

50.     Plaintiff has suffered damages as a result of Defendant's fraud by omission.  As of March 5, 2019, HESC claims that Plaintiff owes $87,819.72 under the Consolidation Loan.

51.     The actions of Defendant that form the basis of Plaintiff's fraud by omission claim were fraudulent (i.e., concealment of material facts known to the Defendant and concealed with the intention of causing injury to the Plaintiff).  Under these circumstances, Plaintiff is entitled to an award of punitive damages against Defendant under KRS § 411.186(2).

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendant on Count II; (2) award Plaintiff damages, including punitive damages, in an amount to be established at trial or on summary judgment; (3) award Plaintiff prejudgment interest at the rate of eight percent per annum under KRS § 360.010 and postjudgment interest under KRS § 360.040 at the rate of six percent per annum compounded annually; (4) award Plaintiff all of the costs that she incurs in the litigation of this action; and (5) grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY AND
## REQUEST FOR AN AWARD OF PUNITIVE DAMAGES

52.     Plaintiff incorporates by reference the allegations contained in paragraphs 1–51 above.

53.     Under Kentucky law, a fiduciary relationship may exist under a variety of circumstances, including all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.

54.     As Plaintiff's financial advisor with a wealth of experience in dealing with financial matters, a special confidence was reposed in Defendant to act in good faith and with due regard to the interests of Plaintiff.

55.     Defendant breached a fiduciary duty owed to Plaintiff when he forged her signature on the documents evidencing the Loans without her knowledge or consent.  Plaintiff has suffered damages as a result of Defendant's breaches of fiduciary duty.

56.     The actions of Defendant that form the basis of Plaintiff's breach of fiduciary claim were fraudulent (i.e., concealment of material facts known to the Defendant and concealed with the intention of causing injury to the Plaintiff).  These actions were also oppressive (i.e., specifically intended by Defendant to subject Plaintiff to cruel and unjust hardship), intentional, wanton or reckless misconduct and/or carried out with malice (i.e., conduct which was specifically intended by Defendant to cause tangible or intangible injury to Plaintiff or conduct that Defendant carried out both with a flagrant indifference to the rights of Plaintiff and with a subjective awareness that such conduct would result in human death or bodily harm).  Under

these circumstances, Plaintiff is entitled to an award of punitive damages against Defendant under KRS § 411.186(2).

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendant on Count III; (2) award Plaintiff damages, including punitive damages, in an amount to be established at trial or on summary judgment; (3) award Plaintiff prejudgment interest at the rate of eight percent per annum under KRS § 360.010 and postjudgment interest under KRS § 360.040 at the rate of six percent per annum compounded annually; (4) award Plaintiff all of the costs that she incurs in the litigation of this action; and (5) grant Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael J. Gartland, Esq.
Michael J. Gartland, Esq.
DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
mgartland@dlgfirm.com
COUNSEL FOR PLAINTIFF
KIMBERLY SEELEY BOKKENHEUSER

Pleadings\Complaint - FV 20190409.doc